FILED
MAR 07 2011

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DOYLE'S CAROLINA 7, LLC, an Oregon limited liability company; DOYLE'S CARNEGIE VILLAGE, LLC, an Oregon limited liability company; RECREATIONAL HOLDINGS, LLC, a Washington limited liability company; WILFRED SCOTT DOYLE, and PATRICIA SMITH DOYLE,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID THURBER; JEFF SCHUMACHER; WILLIAM ALMON SR.,<br><br>Defendants. | Civ. No.: 08-1507-AC<br><br>FINDINGS AND RECOMMENDATION |

ACOSTA, Magistrate Judge:

*Introduction*

Before the court is Defendant William Almon Sr.'s ("Almon") motion to dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(2). Almon argues that this court lacks subject matter jurisdiction over the dispute and lacks personal jurisdiction over Almon. For the reasons set forth below, the court recommends that Almon's motions to dismiss be granted.

*Factual Background*

In December 2008, Plaintiffs brought suit against Sunwest Management, Inc. ("Sunwest"), a Salem-based senior living home operator; its founder, Jon Harder; and affiliated entities and individuals. The Complaint was filed against twenty defendants in federal court and alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 - 1968 (2009), in addition to several state laws. The basis for the Complaint arose out of the financial losses that Plaintiffs suffered after investing in a real estate investment "Ponzi scheme."

Specifically, Plaintiffs allege that Harder worked through numerous Oregon entities, primarily Sunwest, Canyon Creek Development, Inc. ("CCD"), and Canyon Creek Financial, LLC ("CCF") (together known as "Canyon Creek") in implementing a Ponzi scheme. These entities would convince investors that they were investing in properties that were separately managed and owned, when in fact, funds were commingled between the companies and properties so that investors did not actually know whether their chosen investments were thriving or failing. Profits from successful properties were used to cover up the failure of unsuccessful properties, so that a constant stream of new money was required to keep up the facade of a wholly profitable venture.

Due to the nature of several of the allegations, the Securities and Exchange Commission ("the SEC") became involved in March 2009, roughly four months after the Complaint was filed. At that

time, the SEC brought a receivership and securities fraud action against Harder and other defendants, a result of which was to enjoin this action from proceeding. *See SEC v. Sunwest Mgmt., Inc., et al,* No. 09-6056, 2009 WL 1065053 (D. Or. Apr. 20, 2009). Claims against Jon Harder individually had already been stayed due to a bankruptcy filing.

This suit remained stayed from March 2009 until February 2010 when a status conference convened. By the time of that status conference, Plaintiffs were aware that if they wanted to receive a distribution from the SEC receivership action, they would be required to dismiss all current and future claims against Sunwest-affiliated entities as a condition of recovering such distribution. Accordingly, Plaintiffs elected to voluntarily dismiss several parties in this suit. By the time Plaintiffs filed their Amended Complaint in July 2010, all of the federal claims and all of the Defendants against whom Plaintiffs had asserted any federal claims had been dismissed.

The Plaintiffs were the same in the Amended Complaint as in the Original Complaint: Doyle's Carolina 7, LLC, an Oregon limited liability company; Doyle's Carnegie Village, LLC, an Oregon limited liability company; Recreational Holdings, LLC, a Washington limited liability company; and Wilfred and Patricia Doyle ("the Doyles"), residents of California. However, only three of the original twenty Defendants remained named in the Amended Complaint: David Thurber ("Thurber"), Jeff Schumacher ("Schumacher"), and Almon. Thurber and Schumacher are Oregon residents and Almon is a resident of Washington.

Plaintiffs allege that Almon, acting as their real estate broker, purposefully directed them to Canyon Creek and Sunwest to complete a property transaction designed to defer paying federal income taxes on proceeds from sale of a property. This is referred to as a "1031 tax-deferred exchange." After Almon contacted Canyon Creek on behalf of the Doyles, the Doyles were allegedly

FINDINGS AND RECOMMENDATIONS    3    {ALG}

solicited by CCF employees, Schumacher and Thurber, and a personal friend of Almon's, Dr. L. H. Butler, to invest with Canyon Creek. The Doyles invested proceeds from a 1031 exchange into CCF and Sunwest, investments which ultimately reduced the value of their Oregon limited liability companies. Plaintiffs allege that Almon breached his fiduciary duties, in violation of state law, when he put the Doyles in contact with Sunwest and Canyon Creek after he failed to perform due diligence that should have unearthed the massive fraud underlying those companies.

Because Plaintiffs did not include the federal RICO violation allegation in their Amended Complaint as they had done in the Original, the Amended Complaint lacks federal question jurisdiction. Additionally, several Plaintiffs and Defendants are Oregon residents, thereby defeating the complete diversity necessary to invoke diversity jurisdiction. Almon, therefore, has moved to dismiss the present suit on jurisdictional grounds. He argues that the Amended Complaint does not invoke federal subject matter jurisdiction because there is no federal question or diversity. He also denies the existence of personal jurisdiction.

*Legal Standards*

I. Subject Matter Jurisdiction

The federal district courts are courts of limited jurisdiction. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court itself, however, has an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999). Subject matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived. *U.S. v. Cotton*, 535 U.S. 625, 630 (2002). Accordingly, when a federal court finds that it lacks subject matter jurisdiction, it must dismiss the complaint in its entirety. *Arbaugh v. Y & H*

*Corp.*, 546 U.S. 500, 514 (2006).

A motion to dismiss for lack of subject matter jurisdiction is governed by FRCP 12(b)(1). An FRCP 12(b)(1) motion may be raised at any stage of the litigation, including post-trial and after the entry of judgment. FRCP 12(h)(3). The court will grant defendant's FRCP 12(b)(1) motion to dismiss if the complaint fails to allege facts sufficient to establish subject matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Alternatively, a defendant may seek dismissal under FRCP 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint. *Id.* Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*

Even if the complaint fails to allege facts sufficient to establish subject matter jurisdiction according to federal question jurisdiction or diversity, the court may still have jurisdiction over certain state-law claims according to supplemental jurisdiction. 28 U.S.C. § 1367 (2009). Federal courts may exercise supplemental jurisdiction over state-law claims linked to a claim based on federal law. *Id.* Supplemental jurisdiction cannot exist, however, without original jurisdiction. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001). This means that the court must first satisfy its obligation to confirm the existence of original subject matter jurisdiction before adjudicating supplemental claims under § 1367. *Id.*

II. Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by FRCP 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008), (citing *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990)). In evaluating the defendant's motion, the court "may consider evidence presented in affidavits to assist it in its determination and may

order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). If the court decides the motion based on the pleadings and affidavits submitted without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). The court accepts uncontroverted allegations contained within the plaintiff's complaint as true, and resolves conflicts between statements contained within the parties' affidavits in the plaintiff's favor. *Boschetto*, 539 F.3d at 1015 (citations omitted).

*Discussion*

I. Subject Matter Jurisdiction

    A.    *The Effect of the Related SEC Suit on Diversity Jurisdiction*

Plaintiffs urge the court either to deny the motion to dismiss for lack of subject matter jurisdiction, or, alternatively, to stay its decision until after the Receiver in the related SEC case decides whether to bring claims against Defendants Thurber and Schumacher. *See SEC v. Sunwest Management, Inc., et al*, CV 09-6056-HO (D. Or. filed Mar. 2, 2009). According to an approved plan of distribution in that case, Plaintiffs must dismiss claims against defendants in the SEC receivership action and other Sunwest-affiliated entities as a condition of recovering a distribution. Plaintiffs Doyle's Carolina 7, LLC, Doyle's Carnegie Village, LLC, and Recreational Holdings, LLC all have filed claims in the SEC receivership action. Therefore, those Plaintiffs would be bound by any orders in that case.

The Receiver originally had approximately six months, up to the deadline of April 15, 2010, to pursue third-party claims, and during that time the Receiver had exclusive right to bring such

claims. The initial deadline already has been extended five times, however, to June 15, 2010, October 15, 2010, November 30, 2010, February 28, 2011, and most recently to April 15, 2011.[1]

If the Receiver decides to bring a claim against Thurber and Schumacher, but not against Almon, the Doyles would be the only Plaintiffs remaining in this suit. Plaintiffs are correct in arguing that this court would then have original jurisdiction over the claims due to diversity: Almon is a Washington resident, the Doyles are California residents, and the amount of damages sought exceed $75,000. If the Receiver makes a different decision in whom he brings claims against, however, there may never be diversity jurisdiction.

At this time, no diversity exists. The Amended Complaint in this suit lists Plaintiffs from Oregon, Washington, and California and Defendants from Oregon and Washington. A plaintiff properly invokes "diversity of citizenship" jurisdiction under 28 U.S.C. § 1332 when the plaintiff presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. *Id.* at 513. That diversity must be complete. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Because there is an overlap of Oregon and Washington residents, there is not complete diversity, without which there cannot be diversity jurisdiction.

Not only is the Receiver's decision speculative, including *when* the Receiver will make a decision, but the outcome of that decision is ultimately irrelevant to this court's subject matter jurisdiction over the present suit. A district court cannot maintain a suit over which it does not have subject matter jurisdiction in hopes that a contingent event invokes jurisdiction at a later time. *Mann v. City of Tucson*, 782 F.2d 790, 794 (9th Cir. 1986). Subsequent events do not confer jurisdiction.

---

[1] *See SEC v. Sunwest Mgmt.*, CV 09-6056-HO, Docket no. 1907 (D. Or. filed Feb. 25, 2011).

*Id.* It is the court's obligation, at all times, to confirm sua sponte that it is has subject matter jurisdiction over the suit. *Arbaugh*, 546 U.S. at 514 (2006). Because jurisdiction is to be determined as it exists at the time it was invoked, *id.*, and there is currently no diversity jurisdiction, any diversity that may be brought about as a result of the related receivership action is not relevant to this court's subject matter jurisdiction.

        B.      *Original Jurisdiction in the Amended Complaint*

Not only does this court currently lack diversity jurisdiction, but Plaintiffs have conceded that there is no federal-based claim in the Amended Complaint. It is the Amended Complaint and not the Original Complaint that is used in a jurisdictional analysis because an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Without such a claim, there cannot be federal question jurisdiction.

Absent a federal question, a plaintiff must rely on supplemental jurisdiction to invoke this court's authority. 28 U.S.C. § 1367. A federal court may, through the exercise of supplemental jurisdiction, retain jurisdiction over state-law claims after dismissal on the merits of all claims over which it had original jurisdiction. *Potter v. Crosswhite*, No. 09-814, 2010 WL 3810148, at *5 (D. Or. July 29, 2010). Under 28 U.S.C. § 1367(a), the "district courts shall have supplemental jurisdiction over all other claims that are so related to [federal claims] that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Non-federal claims are part of the same "case" as federal claims when they "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding." *Finley v. U.S.*, 490 U.S. 545, 549 (1989) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). A federal court has discretion to decline jurisdiction over state law claims if, for example, the state claims substantially predominate, the

state claims involve novel or complex issues of state law, trial of the state and federal claims together is likely to result in jury confusion, or retention of the state-law claims requires the expenditure of substantial additional judicial time and effort. *Gibbs*, 383 U.S. at 726-27; *see* 28 U.S.C. § 1367(c).

Supplemental jurisdiction cannot exist, however, without original jurisdiction. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001). This requirement must be distinguished from the district court's discretionary authority to retain jurisdiction over state-law claims where it has dismissed on the merits federal claims over which it did have original jurisdiction. *Id.* at 806. When a district court had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state claims, subject to the factors in 28 U.S.C. § 1367(c)(1)-(4). *Id.*

Defendant Almon argues that this court does not have the discretion to exercise supplemental jurisdiction over the state-law claims that remain because the Plaintiffs' Amended Complaint does not contain any federal claims to which state-law claims could be "supplemental." Federal jurisdiction existed when Plaintiffs filed their original complaint because they alleged federal RICO violations. However, Plaintiffs voluntarily dismissed various parties and claims from this suit and filed an Amended Complaint with only state-law claims remaining. The Supreme Court addressed this issue in *Rockwell Int'l. Corp. v. U.S.*, stating that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell*, 549 U.S. 457, 473-474 (2007).

*Rockwell* does not explicitly state that a district court can never exercise supplemental jurisdiction if the amended complaint does not invoke original jurisdiction. In fact, the case notes that "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally *does not* defeat jurisdiction." *Id.* at 474, n. 6 (emphasis added) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 346, 357). Jurisdiction

should not be defeated in such a scenario because "removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment." *Id.*

The distinction, therefore, hinges upon whether the suit is in federal court because 1) a defendant removed the suit or 2) the plaintiff filed the suit in federal court. *Id.* at 473-474. When a plaintiff files a suit in federal court based upon federal question jurisdiction and then amends his complaint to remove those federal claims, he has essentially "amended away" subject matter jurisdiction. Unlike Plaintiffs' assertions, the distinction does not hinge upon whether a plaintiff was "forced" to dismiss certain parties or claims due to procedural reasons. Plaintiffs contend that they were "forced" to dismiss several parties to this suit and the accompanying RICO claims according to the distribution agreement in the related receivership action and that therefore, the court should still have the discretion to invoke supplemental jurisdiction based on claims in their Original Complaint. Whether or not a plaintiff felt "forced" procedurally to drop the federal claims from a complain is not a distinction recognized by the controlling case law.

In this suit, Defendants did not remove the case to federal court. Instead, Plaintiffs brought suit in federal court and then dismissed their federal claims when they filed an Amended Complaint. Several other circuits, and a district court within the Ninth Circuit, have concluded that the district court does not have original jurisdiction, on which supplemental jurisdiction must rely, if an amended complaint lacks original jurisdiction and fails to incorporate by reference an earlier pleading that did invoke original jurisdiction. *See, e.g., Robinson v. Bank of NY Mellon,* No. 10-1829-PHX-FJM, 2011 WL 13532 (D. Ariz. Jan. 4, 2011); *Wellness Cmty. v. Wellness House,* 70 F.3d 46 (7th Cir. 1995); *Semulka v. Moschell,* 2010 WL 4672813 (3d Cir. Nov. 18, 2010); *Boelens v. Redman Homes, Inc.* 759 F.2d 504 (5th Cir. 1985); *Connectu LLC v. Zuckerburg,* 522 F.3d 82 (1st Cir. 2008) (stating more broadly that it

is the amended complaint, and not the superseded original complaint, that dictates whether or not federal jurisdiction exists).

Because Plaintiffs' Amended Complaint does not assert any federal claims, and there is no diversity jurisdiction, this court does not have original jurisdiction. Without the hook of the RICO claims – the basis for original jurisdiction – this court has no power under either § 1367 or Article III of the Constitution to adjudicate any claims in the lawsuit. *Herman Family Revocable Trust*, 254 F.3d at 805. Therefore, the motion to dismiss for lack of subject matter jurisdiction should be granted.

## II.  Personal Jurisdiction

In addition to the lack of subject matter jurisdiction, this court also lacks personal jurisdiction over Defendant Almon. "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015. Oregon's long-arm statute, Oregon Rule of Civil Procedure 4L, creates a standard that is co-extensive with federal jurisdictional standards so that a federal court sitting in the District of Oregon may exercise personal jurisdiction wherever it is possible to do so within the limits of federal constitutional due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). Due process requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980); *Int'l Shoe Co. v. State of Wash.,* 326 U.S. 310, 316 (1945). The fundamental issue is whether a defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir. 1986), (quoting *World-Wide Volkswagen,* 444 U.S. at 297).

There are two types of personal jurisdiction that a court may have over a defendant: general and specific. *Reebok Int'l Ltd. v. McLaughlin,* 49 F3d 1387, 1391 (9th Cir. 1995). General jurisdiction

exists if the non-resident's contacts with the forum state are continuous and systematic, and the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice. *Id.* (citing *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1485 (9th Cir. 1993)). Specific jurisdiction is determined by a three-part test:

> (1) the non-resident defendant must purposefully direct his activities at, consummate some transaction with, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum;
> (2) the claim must be one arising out of or relating to defendant's forum-related activities; and
> (3) the exercise of jurisdiction must be reasonable.

*Ballard,* 65 F.3d at 1498. Each of these elements must be satisfied before the exercise of jurisdiction is proper. *Pac. Atl. Trading Co., Inc. v. M/V Main Express,* 758 F.2d 1325, 1329 (9th Cir. 1985).

Plaintiffs in this suit do not argue that there is general jurisdiction over Defendant Almon. Instead, they rely on specific jurisdiction principles and the events alleged in this case. There are four facts upon which Plaintiffs base their argument in support of personal jurisdiction over Almon: 1) Almon recommended that the Doyles invest in Canyon Creek and/or Sunwest; 2) Almon contacted employees of those entities and referred to them his clients, the Doyles; 3) Almon personally vouched for Sunwest and/or Canyon Creek as good investment options for the Doyles; and 4) Almon asked for and received from Plaintiffs permission to have Dr. Butler, a personal friend of Almon, contact the Doyles. Because these facts are insufficient to invoke specific jurisdiction over Almon, Defendant's 12(b)(2) motion to dismiss should be granted.

A. *Purposeful Availment or Direction*

The first element of the specific jurisdiction test is satisfied when a defendant either purposefully availed himself of privileges of the forum state or purposefully directed his activities at the forum. *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010). "Purposeful

direction" is most often analyzed in suits sounding in tort, whereas "purposeful availment" is most often used in suits sounding in contract. *Id.* As this suit involves tort claims rather than contract claims – claims of professional negligence and breach of fiduciary duty – Defendant Almon must have "purposefully directed" his conduct at the state of Oregon in order for there to be personal jurisdiction. The Supreme Court has laid out a three-part test to evaluate purposeful direction, which is referred to as the "*Calder*-effects" test. *See Calder v. Jones*, 465 U.S. 783 (1984).

          1.     *Calder*-Effects Test

According to the *Calder*-effects test, the defendant allegedly must have: a) committed an intentional act, b) that was expressly aimed at the forum state, c) causing harm which the defendant knows is likely to be suffered in the forum. *Brayton Purcell LLP*, 606 F.3d at 1128. These contacts need not be tortious or otherwise wrongful in order to bring about personal jurisdiction. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).

Plaintiffs allege that Almon satisfied the *Calder*-effects test when he intentionally recommended Oregon companies, Canyon Creek and Sunwest, as investment options, personally vouched for those companies, and ensured that an introduction was made between the parties. Assuming the Plaintiffs' allegations to be true, Almon committed intentional acts when he contacted Schumacher, Thurber, and Butler, and suggested that they solicit the Doyles. Almon thereby satisfied the first element of the *Calder*-effects test. Almon's contacts did not, however, satisfy the second and third element. Almon's contacts must have been expressly aimed at Oregon. "The 'express aiming' analysis depends to a significant degree on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004). In *Calder v. Jones*, for example, reporters "expressly aimed" their contacts at California when they wrote an article about a

California actress, whose career reputation was based in California, and where the article's greatest circulation was in California. *Calder*, 465 U.S. 783.

In this suit, it is not nearly as clear as in *Calder* as to where the Defendant's contacts were aimed. While Almon may have contacted Schumaker and Thurber, employees of an Oregon company, Almon would have known from his personal experience with Canyon Creek and Sunwest that those companies have investment properties all over the country. Most importantly, Almon's contacts were for the sole purpose of getting his clients, California residents, to have satisfactory investment opportunities, regardless of location. Almon's contacts were more expressly aimed at California, the location of his clients.

Because Almon's clients lived in California, it was most foreseeable to him that any harm from future investments would occur in California where the Doyles lived and held their assets. At the time of Almon's actions, the Doyles did not live in Oregon, were not in the state of Oregon for any reason, and did not own or participate in any Oregon-based LLCs. If the *Calder* test establishes jurisdiction over Almon, it is in either California or Washington. While Oregon may be a more convenient location for Plaintiffs to adjudicate these claims, "questions of time, cost, and efficiency do not undergird jurisdiction." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). Without sufficient contacts in Oregon to satisfy the *Calder*-effects test, the first element of the specific jurisdiction test cannot be met.

B.  *Second and Third Elements of Specific Jurisdiction Test*

Because Almon's actions did not satisfy the first element of the specific jurisdiction test, it is not relevant whether Almon's actions satisfied the remaining elements of the test. He necessarily failed the specific jurisdiction test. Regardless, Almon did not satisfy the second and third elements. Almon did not purposefully direct his conduct at the State of Oregon so Plaintiffs' claim cannot be one "arising out

of or relating to Defendant's forum-related activities." *Ballard*, 65 F.3 at 1498. Additionally, because Plaintiffs' claims did not arise out of Almon's activities in or directed at Oregon, it would be unreasonable for Oregon to exercise personal jurisdiction over him. Jurisdiction is only presumed to be reasonable when the court finds purposeful availment, which was not found in this case. *Sher*, 911 F.2d at 1364. Having failed the *Calder*-effects test and the specific jurisdiction test itself, this court lacks personal jurisdiction over Almon and therefore recommends that Defendant's FRCP 12(b)(2) motion to dismiss be granted.

## *Conclusion*

For the reasons stated above, this court recommends that Defendant Almon's FRCP 12(b)(1) and FRCP 12(b)(2) motions to dismiss should be GRANTED.

## *Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due March 21, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 7th day of March, 2011.

JOHN V. ACOSTA
United States Magistrate Judge